UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WILLIAM DESENA & <br> SANDRA DUNHAM, <br><br> Plaintiffs, <br><br> v. <br><br> PAUL LEPAGE, in his official capacity as <br> Governor of the State of Maine, et al. <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Docket No. <br> ) 1:11-cv-117-GZS-DBH-BMS <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER ON MOTION FOR ATTORNEY FEES & COSTS**

Before the Court is Plaintiffs' Motion for Award of Attorney Fees and Costs (Docket # 49). As explained herein, the three-judge panel GRANTS IN PART and DENIES IN PART the Motion.

**I.   LEGAL STANDARD**

42 U.S.C. § 1988 allows the Court to award "a reasonable attorney's fee as part of the costs" to "any prevailing party" in a case involving the vindication of civil rights, which necessarily includes this case in which Plaintiffs prevailed on their claim that the apportionment of Maine's congressional districts was unconstitutional.

As the Supreme Court recently (and unanimously) reiterated in <u>Fox v. Vice</u>, -- U.S. ---, 131 S. Ct. 225 (2011):

> A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes. That

>'result is what matters,' . . . A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if 'the plaintiff failed to prevail on every contention.' The fee award, of course, should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief: Such work 'cannot be deemed to have been expended in pursuit of the ultimate result achieved.'

Id. at 2214 (quoting and citing Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)) (internal citations omitted).

The calculus of what award the Court will approve initially requires a determination of the appropriate "lodestar," which is "the product of the number of hours appropriately worked times a reasonable hourly rate or rates." Hutchinson v. Patrick, 636 F.3d 1, 13 (1st Cir. 2011). The party seeking the fee award bears the burden of providing the Court with the materials necessary to construct the lodestar. Id. This includes the "burden of establishing the prevailing hourly rate (or schedule of rates) in the community for the performance of similar legal services by comparably credentialed counsel." Id. at 16. In determining the number of hours that were appropriately worked, the Court must subtract "duplicative, unproductive, or excessive hours." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001). "Finally, the trial court has the discretion to adjust the lodestar itself upwards or downwards based on several different factors, including the results obtained, and the time and labor required for the efficacious handling of the matter." De Jesus Nazario v. Rodriguez, 554 F.3d 196, 207 (1st Cir. 2009) (citing Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008)).

## II.   DISCUSSION

The Court need not repeat the facts of this case, which are detailed for interested readers in the panel's June 21, 2011 Memorandum and Order (Docket # 33). See Desena v. Maine, 793 F. Supp. 2d 456, 457-59 (D. Me. 2011). Following the issuance of that order, Defendants

completed the required redistricting through an expedited legislative process, which concluded with the Governor signing L.D. 1590 on September 28, 2011. See Act to Reapportion the Congressional Districts, P.L. 2011, ch. 466 (emergency, effective Sept. 28, 2011). The Court then proceeded to enter judgment in favor of Plaintiffs on November 1, 2011 without ordering any further relief.

Via the pending motion for attorney's fees and costs, Plaintiffs seek an award in excess of $150,000.[1] The State Defendants respond by acknowledging that "plaintiffs are entitled to fees as successful litigants." (State Defs. Response (Docket # 53) at 18.) Nonetheless, they seek to have the amount of any award decreased on numerous bases and ultimately recommend that the reasonable award should total $47,406.22. The Maine Democratic Party, which participated in this case as an intervenor (without objection from either Plaintiffs or Defendants), has also filed a response in which it briefly argues that, as an intervenor, it should not be required to pay any of the requested fees. Alternatively, the Maine Democratic Party asks for an additional opportunity to respond to the particulars of Plaintiffs' request if the Court is considering requiring the Intervenor to pay any of the requested fees and costs.

### A. Determination of the Lodestar

Before turning to the necessary examination of the hours and rates of each member of Plaintiffs' litigation team, the Court initially addresses the objection that the overall staffing was excessive. As Defendants note, one local attorney, Attorney Woodcock, entered an appearance for Plaintiffs in this matter. As is clear on the current submission, Attorney Woodcock's work received support from a paralegal at his firm as well as significant support from the firm of

---

[1] This amount includes the $142,797.97 amount listed in the initial motion as well as the amounts reflected on the additional invoices accompanying Plaintiffs' Reply. See Exs. A & B to Reply (Docket #s 58-1 & 58-2).

Baker & Hostetler LLP ("Baker Hostetler"). The mere fact that the four attorneys from Baker Hostetler were not listed as attorneys of record does not prevent the Court from awarding fees for their work in this case. Nonetheless, the State Defendants argue that five attorneys, one expert and one paralegal amount to overstaffing of a single-issue case. In support of this argument, Defendants note that they staffed the case with two generally experienced attorneys. Ultimately, "[e]verything turns on the reasonableness of the staffing patterns employed and the overall time spent." Hutchinson, 636 F.3d at 14. In this case, the Court believes that Plaintiffs' overall staffing pattern was excessive, resulting in the billing of duplicative and unproductive hours. Therefore, the Court will examine the billing records submitted with an eye towards deducting hours that reflect this overstaffing.

1. **Expert Clark Bensen**

In responding to the fee request, the State Defendants press the Court to deny entirely the portion of the fee request attributed to Clark Bensen of Polidata LLC. Mr. Bensen is an "attorney by training and a data analyst by practice." (Ex. D to Reply (Docket # 58-4) at Page ID 483.) The Bensen invoice attached to the initial motion indicates that Mr. Bensen billed a total of 20.75 hours at a rate of $300 an hour for a total requested sum of $6,225.00. (See Ex. 2A to Woodcock Decl. (Docket # 49-1) at Page ID 355.) Mr. Bensen's detailed billing record indicates that he began billing time to this matter on March 16, 2011 with a final entry on July 11, 2011. Austere descriptions account for these hours as "review," "conf. call," or "phone calls." (See id. at Page ID 356-57.)

On the record presented, the Court concludes that Mr. Bensen's expertise in analyzing population data and drawing maps was not necessary for this litigation and, therefore, was unproductively spent in connection with this case. Plaintiffs' Reply indicates that Bensen's work

4

was done in anticipation of assisting the Court with re-drawing the lines of Maine's congressional districts. However, most of Bensen's work was done well in advance of the Court's July 7, 2011 Procedural Order, which notified the parties of the possibility that they might be required to produce a redistricting plan on an expedited schedule. If the Court had ultimately required the submission of such a plan, it might well consider Mr. Bensen's work reasonable and productive. However, on the current record, the minimal explanations provided in the submitted invoices and Plaintiffs' briefs do not support the amounts claimed for Mr. Bensen.[2] Therefore, the Court excludes entirely the hours requested by Mr. Bensen (totaling $6,225.00) and also excludes a majority of the time billed by other attorneys for conferencing with Mr. Bensen.[3]

### 2. Attorney Timothy C. Woodcock

As detailed in his affidavit, Attorney Woodcock is a partner at the firm of Eaton Peabody and served as lead counsel in this matter. All told, he has submitted invoices indicating he has billed 133.1 hours to this case for a total individual fee request of approximately $39,264.00.

Attorney Woodcock has approximately 35 years of experience practicing law in Maine as a member of the bar of this Court. He has billed his work in this case at an hourly rate of $295.

---

[2] To the extent that Plaintiffs' Reply attempts to repackage Mr. Bensen as an attorney who works frequently with Attorney Braden, the record is devoid of any support for his $300 billing rate and his contemporaneous billing records contain insufficient detail to warrant allowing the proposed award as an actual attorney's fee. See Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008) (indicating that courts may "discount or disallow" fees if time records are "too generic").

[3] See Exhibit A to State Defs. Response (Docket # 58-1) (reflecting State Defendants' attempt to catalog the time that may be attributed to other counsel conferencing with Mr. Bensen). The Court notes that Plaintiffs have not objected to the contents of this catalog as inaccurate.

The State Defendants have not objected to this rate and it appears within the approved range of prevailing market rates charged by comparably credentialed Maine counsel.[4]

The Court next turns its attention to the hours reasonably expended by Mr. Woodcock at his claimed hourly rate. With respect to Attorney Woodcock's hours, State Defendants specifically ask that the Court exclude the following categories of time: (1) time spent talking to the media, (2) time spent attending two meetings of the Maine Reapportionment Commission, (3) time spent dealing with Mr. Bensen, and (4) time spent dealing with other unidentified persons and unrelated matters. State Defendants also seek to have Mr. Woodcock paid at a lower rate for: (1) any non-core work, which they describe as including "less demanding tasks, such as letter writing and phone calls" (State Defs. Response at 17), and (2) time spent preparing this pending motion for fees. The Court considers each of these objections in turn.

First, with respect to time spent talking to the media, State Defendants' objection is well taken. "Reported federal cases are unanimous in denying awards of attorneys' fees for media-related time . . . ." See Parker v. Town of Swansea, 310 F. Supp. 2d 376, 393 (D. Mass. 2004) (quoting McLaughlin v. Boston School Committee, 976 F. Supp. 53, 72 (D. Mass. 1997)). State Defendants assert that Attorney Woodcock's contemporaneous billing records established 3.3 hours of time devoted exclusively to media and an additional 3.8 hours where it appears part of the time was expended on media. Having reviewed the entries cited by State Defendants, the Court will deduct the 3.3 hours listed as time spent exclusively on media and 1.4 hours of the time where the entries indicate time was partially spent on media. As a result, a total of 4.7 hours will be deducted as media-related time.

---

[4] Nonetheless, the Court notes that this hourly rate is at the high end of recently approved rates. See J.J.R. Distributing Corp v. Sandler Bros., No. 09-cv-P-S, 2010 WL 1064729 at *2 (D. Me. Feb. 23, 2010) (noting that "[t]he maximum rate usually awarded to counsel in the Greater Portland area . . . is in the vicinity of $250.00"), report and recommendation adopted by 2010 WL 1064733 (D. Me. Mar. 18, 2010).

6

Second, State Defendants also ask that the Court exclude time and disbursements for Attorney Woodcock to attend two meetings of the Reapportionment Commission. In the Court's view, this time was reasonably expended. Attending these meetings allowed Attorney Woodcock to respond (or forego responding) to the many status reports filed by State Defendants and to confirm that reapportionment was proceeding, thereby foregoing additional preparation for further proceedings in this case. The Court will allow the time attributed to attending these two meetings. However, the Court will not allow Attorney Woodcock to recover his travel time at the full $295 rate. Nothing in the record supports such a practice. In the absence of such support, the Court notes that the common past practice is for an award to reflect an attorney's travel time at half of his hourly rate. See, e.g., Diaz v. Jiten Hotel Mgmt, Inc., --- F. Supp. 2d ----, 2011 WL 5346033 at * 2 (D. Mass. 2011) (noting that in the absence of documentation an attorney is simultaneously working and traveling, courts in the First Circuit "reduce the award for [travel] hours by fifty percent"); see also Perdue v. Kenny A., --- U.S. ---, 130 S. Ct. 1662, 1670 (2010) (noting that the district court has "halved the hourly rate for travel hours"). In this case, Attorney Woodcock's invoices reflect travel on April 27, 2011, June 9, 2011, August 23, 2011 and August 30, 2011 for a total of 15.5 hours. The Court will deduct 7.75 hours to bring the billing rate for all charged travel to $147.50.

Third, in accordance with the Court's exclusion of fees related to Mr. Bensen, the Court will also exclude a total of 2.5 hours of time attributed to working with Mr. Bensen.[5]

---

[5] The Court arrives at 2.5 hours after reviewing the time cataloged in State Defendants' Exhibit A (Docket # 53-1). As a result, the Court deducts the 0.8 hours spent working exclusively with Mr. Bensen and an additional 1.4 hours from the 3.3 hours of time entries where it appears that a portion of the time was spent dealing with Mr. Bensen. The Court also deducts 0.1 hours from the 11/30/11 time entry (Page ID 454) and 0.2 hours from the 11/14/11 time entry (Page ID 457); these two entries are included in additional billing records that were submitted with Plaintiffs' Reply.

7

Fourth, Plaintiffs have responded to State Defendants' concerns regarding unidentified persons by explaining the role Darcie Johnson played in the case. (See Pls. Reply at 10.) As a result of that explanation, the Court will allow time attributed to discussions with Ms. Johnson. Plaintiffs have not sufficiently explained the role played by the other individuals to whom State Defendants object. As a result, the Court will deduct 1.3 hours of time attributable to Attorney Woodcock's time spent in contact with these individuals who have no apparent role in this litigation.[6]

The Court notes that the State Defendants also objected to 0.2 hours that Attorney Woodcock billed in connection with review of a separate lawsuit. In Reply, Plaintiffs have agreed that this time entry should be excluded from any fee award in this case and the Court has deducted this time accordingly.

With respect to State Defendants' request that Attorney Woodcock be compensated at a lower rate for non-core work, the Court has already lowered the rate for travel. Having reviewed the billing records in detail, the Court believes that the only other non-core work that warrants a reduction in hourly rate is the time spent preparing the fee motion. While State Defendants did not list any hours from Attorney Woodcock's record in their response, Attorney Woodcock submitted supplemental bills with the Plaintiffs' Reply which cover the time period from November 1, 2011 through March 5, 2012. (See Ex. B to Pls. Reply (Docket # 58-2).) Upon review of those records, it appears that Attorney Woodcock has billed approximately 12 hours to the preparation and filing of the pending motion. The Court will deduct half of that time (6

---

[6] The Court arrives at this number by deducting (1) the 4/26/11 entry of 0.5 hours describing contact with "J. Sangillo," (Page ID 306), (2) the 6/10/11 entry of 0.2 hours describing "H. Reed Witherby" (Page ID 319), and (3) 0.6 hours from the 6/16/11 entry for 1.3 hours in which a portion of the time was spent in contact with "W. Ferdinand" (Page ID 319-20).

8

hours) and thereby allow fees for Attorney Woodcock's time related to this fee motion at the hourly rate of $147.50.

As a result of all of the above deductions, the Court is left with a finding that Attorney Woodcock reasonably expended 110.65 hours on this matter. At an hourly rate of $295, the lodestar for Attorney Woodcock's work amounts to $32,641.75.

### 3. Paralegal Laurie Wilber

Ms. Wilber's paralegal work in this case is charged at a rate of $95.00 an hour. State Defendants accept this rate, which is within the recent range for comparable paralegal work in Maine. See Pearson v. Astrue, No. 1:11-cv-252-DBH, 2012 WL 837243 (D. Me. March 12, 2012) (approving a paralegal rate of $75 in a social security case but collecting other recent cases approving a $100 prevailing rate for experienced specialized paralegals). In accordance with the legal rulings already made, the Court will deduct 0.2 hours billed in connection with media on July 25, 2011.[7] Therefore, the Court will allow an award for the 11.8 hours she reasonably expended on this case amounting to total paralegal fees of $1,121.00.

### 4. Attorney E. Mark Braden

As detailed in his declaration, Attorney E. Mark Bradeen is Of Counsel at the firm of Baker & Hostetler LLP. Attorney Bradeen has over thirty years of legal experience, including extensive experience in the specialized field of election law. He and his firm have actively participated in redistricting litigation through more than three apportionment cycles. Attorney Bradeen personally served as lead counsel for redistricting litigation in five states during the 2000 decennial period.

---

[7] The Court notes that State Defendants appear to have attributed this time entry to Attorney Woodcock. See Ex. B to State Defs. Response at Page ID 421.

9

All told, Attorney Bradeen has submitted invoices indicating he has billed 41.25 hours at a claimed hourly rate of $595 an hour. State Defendants ask that the rate be lowered to $295 an hour, the local prevailing rate charged by Attorney Woodcock. Plaintiffs predictably respond that the nature of this case required an out-of-state specialist, a label clearly applicable to Attorney Bradeen, and that such specialists are entitled to recover at the prevailing rate of the local area where they practice. See Williams v. Poulos, Nos. 94-2057 & 94-2058, 1995 WL 281451 at *4 (1st Cir. May 12, 1995) ("[O]ut-of-town rates may be applied if the complexities of a particular case *require* the particular expertise of non-local counsel.") (emphasis in original); Maceira v. Pagan, 698 F.2d 38, 40 (1st Cir. 1983).

Even assuming the need for a D.C.-based specialist in redistricting litigation, the Court concludes that Plaintiffs have not met their burden of proving that $595 is the prevailing rate for such representation in Washington D.C. Plaintiffs' sole support for Bradeen's claimed hourly rate is a statement in his own declaration indicating that the rate is "well within the range of the prevailing market rates [for Washington D.C.] charged by attorneys of comparable experience." (Bradeen Decl. (Docket # 49-2) ¶ 15.) Attorney Bradeen does not indicate that he has been awarded this rate in any other fee-shifting case. In fact, Plaintiffs have not cited any civil rights case awarding this rate to any attorney and the Court's own initial research has found none. Rather, the Court's own research indicates that the "Laffey Matrix" is generally used to determine prevailing rates within the D.C. Circuit. See Covington v. District of Columbia, 57 F.3d 1101, 1108-09 (D.C. Cir. 1995); Flores v. District of Columbia, --- F. Supp. 2d ---, Civil No. 11-166(AK), 2012 WL 127618 at *3 n. 3 (D.D.C. Jan. 17, 2012) (explaining the Laffey Matrix and its use). Under the Laffey Matrix, the Court takes judicial notice of the fact that Attorney Bradeen would have been entitled to receive a maximum prevailing rate of $475 when

this case began.[8]   See Laffey Matrix–2003–2012, *available at* http://www.justice.gov/usao/dc/divisions/civil_Laffey_Matrix_2003–2012.pdf.  Considering the procedural history and relative complexity of this case, the Court concludes that $475 is the maximum hourly rate Attorney Bradeen may reasonably charge for his work in this case.

State Defendants specifically ask that the Court deduct the following categories of time from Attorney Bradeen's hours:  (1) time spent talking to the media, (2) time spent dealing with Mr. Bensen and (3) time spent dealing with other unidentified persons and unrelated matters.  As the Court has already indicated, the Court believes all three of these objections are well-founded.  As a result, the Court will deduct (1) 0.75 hours billed on 4/28/11 as media-related time, (2) 8.5 hours of time spent dealing with Mr. Bensen,[9] and (3) 3.5 hours attributable to dealing with unidentified persons.[10]

After these deductions, the Court finds that Attorney Bradeen reasonably expended 28.5 hours on this matter for which he should be compensated at a rate of $475 resulting in a total fee of $13,537.50.

---

[8] The Court recognizes that the Laffey Matrix calls for an increased rate of $495 an hour after May 31, 2011.  In an exercise of its discretion and noting Plaintiffs have made no attempt to segregate time based on this particular date, the Court has chosen not to apply this $20 rate increase to the minimal number of remaining hours that Attorney Bradeen billed after May 31, 2011.

[9] The Court arrives at this amount by reviewing the entries listed in State Defendants' Exhibit A (Docket # 53-1) minus the 4/28/11 entry (which was already deducted as media time).  The Court additionally considers the 4/27/11 entry for 0.25 hours (Page ID 368), the 5/9/11 entry for 0.5 hours (Page ID 369), and the 6/29/11 entry for 0.5 hours (Page ID 375) as time that should be partially attributed to interaction with Mr. Bensen.  The end result is 17 hours of Attorney Bradeen's time entries are partially attributed to interacting with Mr. Bensen and the Court deducts half of the time listed in those entries.

[10] The Court arrives at this number by deducting the following:  1.5 hours from the 3/15/11 entry (Page ID 364), 0.75 hours from the 4/8/11 entry (Page ID 366), 0.125 hours from the 4/27/11 entry (Page ID 368), 0.75 hours from the 6/6/11 entry (Page ID 373), 0.25 from the 8/15/11 entry (Page ID 375) and 0.125 from the 8/16/11 entry (Page ID 375).

### 5. Attorneys Jennifer M. Walwrath, Udyogi A. Hangawatte & Andrene Smith

In addition to Attorney Bradeen, Plaintiffs seek fees for work by three Baker Hostetler associates in connection with this case. Attorney Walwrath, a 2007 law school graduate, has submitted records for 94.25 hours of work at a claimed hourly rate of $420 an hour. Attorney Hangawatte, a 2008 law school graduate, has submitted records for 87.5 hours at a claimed hourly rate of $360 an hour.[11] Attorney Smith, a 2007 law school graduate, has submitted records for 3 hours of work at a claimed hourly rate of $350 an hour.

Defendants ask that the rate for all of these associates be lowered to $175 an hour, which Defendants argue is the prevailing rate in Maine for a comparably credentialed attorney. The Court agrees. See Nkihtaqmikon v. Bureau of Indian Affairs, 723 F. Supp. 2d 272, 284 (D. Me. 2010) (allowing an hourly rate of $175 for an associate with four years of experience). Plaintiffs argue that the Baker Hostetler associates staffed on this matter are specialists who should be permitted to bill their standard out-of-state rates for their work on this case. As already discussed, a court will approve an out-of-state rate that is higher than the local prevailing rate if the attorney requesting that rate has particular expertise that is not readily available in the local market. See Williams, 1995 WL 281451 at *4. Given that redistricting litigation comes up on a decennial basis, it would appear that any attorney would need to practice for at least a decade before he or she could appear in an apportionment litigation cycle with significant experience.[12] The record before the Court simply does not establish that the associates staffed on this matter

---

[11] In the invoices accompanying the Reply, Attorney Hangawatte seeks fees for an additional 11.5 hours worked on the pending motion at an increased rate of $390 an hour.

[12] In fact, Attorney Bradeen highlights his involvement in the redistricting litigation in the "2000 decennial period" and the fact that his "experience in redistricting and apportionment issues goes back at least five apportionment cycles." Bradeen Decl. (Docket # 49-2) ¶¶ 15 & 18. Given the cyclical nature of redistricting litigation, it does not readily appear that attorneys who graduated law school in 2007 and 2008 could develop significant experience in this specialty at this juncture in their legal careers.

had sufficient specialized expertise to warrant the Court using anything other than the local rate for a comparably credentialed associate in Maine. Moreover, Plaintiffs have not met their burden of proving that this matter was so complex as to warrant the use of additional out-of-state specialists to assist Attorney Bradeen. In short, having reviewed the work described in the billing records of Attorneys Walwrath, Hangawatte, and Smith, the Court is satisfied that the work could have been completed by comparably credentialed Maine-based associates.

Having determined that these three attorneys may only be compensated at a lower billing rate, the Court turns to an examination of the number of hours billed. All told, these three associates have billed 196.25 hours. In the Court's judgment, the number of hours is excessive. Closer examination reveals that 41.5 of those hours were spent preparing the submissions in connection with this fee request.[13] Having considered all of the State Defendants' specific objections and the entire procedural history of this case, the Court believes that the associates in this matter reasonably expended half of the time contained on the contemporaneous billing records. See Fox, --- U.S. ---, 131 S. Ct. 2205, 2216 ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."). Therefore, the Court will allow for the recovery of 20.75 hours towards the work on the fee request at the lower rate of $147.50 an hour and 99 hours at the $175 hourly rate for the substantive work on this case. The Court notes that this reduction includes deductions for time spent in consultation with Mr. Bensen, time spent on media as well as time spent dealing with unidentified persons and unrelated matters. It also includes significant additional reductions for overlapping work and redundancies created by having multiple associates at meetings and reviewing the same

---

[13] See Exhibit F to State Defendants Response (Docket # 53-6) & Exhibit A to Pls. Reply (Docket # 58-1).

13

correspondence and drafts. With these reductions, the total fee award for work by the Baker Hostetler associates is $20,385.60.

Ultimately, the Court concludes that the lodestar yields a presumptively reasonably fee of $67,685.85. The Court finds no circumstances that warrant any discretionary adjustment of this figure upward or downward. Likewise, the Court finds no basis for awarding interest.[14]

### 6. Other Requested Expenses & Costs

In addition to the requested fee, Eaton Peabody's submitted invoices show disbursements totaling $845.64. Baker Hostetler's invoices show total expenses of $1,867.58. There has been no objection to these amounts and, therefore, the Court will award costs totaling $2,713.22.

### B. Determination of What Party is Responsible for the Prevailing Party Fees

Having determined the amount of fees and costs that Plaintiffs are entitled to recover, there remains the question of whether the Court can or should require the Maine Democratic Party, as the Intervenor, to pay some portion of the fee award in this case. At the outset, the Court is mindful of the Supreme Court's admonition: "A request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); see also Jacobs v. Mancuso, 825 F.2d 559, 562 (1st Cir. 1987) (similarly quoting Hensley).

In their initial Motion, Plaintiffs did not explicitly seek an award from the Maine Democratic Party.[15] Nonetheless, State Defendants did object to the inclusion of any time related to positions taken by Intervenor and sought to have the time excluded from any fee

---

[14] However, State Defendants will be subject to the post-judgment interest rate if they do not pay the fee award within thirty days of the date of this Order.

[15] The Court notes that Plaintiffs first explicitly argued that the Court might require the Intervenor to pay attorneys' fees in their Reply (Docket # 58). See, e.g., McCormick v. Festive Dev. Group, LLC, 269 F.R.D. 59, 66 n. 4 (D. Me. 2010) (noting that courts generally do not address arguments that are debuted in reply memorandum).

award.[16]  For its part, Intervenor Maine Democratic Party provided a cursory response to the Motion for Fees indicating that as an innocent intervenor it should not be held liable for any fee award.

While this is not an issue on which there is any clear First Circuit precedent, the Ninth Circuit has clearly held that an intervening defendant should be held liable for a § 1988 fee award "'only where the intervenors' action was frivolous, unreasonable, or without foundation.'" Democratic Party of Wash. State v. Reed, 388 F.3d 1281, 1288 (9th Cir. 2004) (quoting Indep. Fed'n of Flight Attendants v. Zipes, 491 U.S. 754, 761 (1989)).  On the record presented, and given the minimal effort expended by all parties on briefing this particular issue, the Court declines to make a finding that the positions taken by the Democratic Party were unreasonable or frivolous.  In this case, neither side objected to the intervention of the Maine Democratic Party although it was readily apparent at that time that the addition of another party would add to the costs of the litigation.  Ultimately, given the unique expedited scheduling required by the election calendar, the Intervenor's participation was helpful to the Court and contributed to the timely entry of judgment in this case.  Under these circumstances, the Court will not require the Intervenor to pay any portion of the fee award.

---

[16] See State Defs. Response at 14-16 & Ex. D (estimating intervenor-related billing as 58.15 hours).  To the extent State Defendants have sought deduction of this time as unproductive or otherwise detached from the ultimate result, the Court rejects that argument.  Plaintiffs clearly prevailed over the positions taken by Intervenor and, thus, the only remaining question is who is responsible for those fees.

15

**III. CONCLUSION**

For the reasons just explained, the Court GRANTS IN PART Plaintiffs' Motion for Award of Attorney Fees and Costs and AWARDS fees totaling $67,685.85 and additional costs totaling $2,713.22 to be paid by the State Defendants. State Defendants shall have thirty days to pay this award after which any amount outstanding will be subject to the standard post-judgment interest rate.

SO ORDERED.

/s/ Bruce M. Selya
Bruce M. Selya
United States Circuit Judge

/s/ George Z. Singal
George Z. Singal
United States District Judge

/s/ D. Brock Hornby
D. Brock Hornby
United States District Judge

Dated this 21st day of March, 2012.